**Richard T. SCALIA and Serena M. Scalia, his wife, Appellants,**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 24, 2005.

Filed June 17, 2005.

Joan L. Stehulak and Richard C. Angino, Harrisburg, for appellants.

Stephen L. Banko, Jr., Harrisburg, for appellee.

BEFORE: HUDOCK, MONTEMURO * and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 The issue presented is whether the trial court abused its discretion in awarding attorney's fees to defendant-appellee, following a trial in which the jury found that appellee had not breached its insurance contract with plaintiffs-appellants. Finding no abuse of discretion, we affirm.

¶ 2 The residence of appellants Richard and Serena Scalia ("the Scalias") suffered extensive damage in a fire on July 1, 1998. The Scalias had insured their home with appellee Erie Insurance Exchange ("Erie"), under a policy that covered loss of the structure and personal property on a replacement cost basis.[1] The Scalias requested coverage for damage caused by the fire, but Erie denied their claim,[2] citing two reasons, based on its analysis of the fire scene and investigation of the circumstances surrounding the fire. First, Erie contended that the fire was arson, set by or at the direction of the Scalias. Second, Erie contended that the Scalias had misrepresented facts and repair costs during the course of the fire investigation and in their claim. Under the terms of the insurance policy, proof of any of these contentions would constitute sufficient grounds for denial of the claim.

¶ 3 The Scalias brought a civil action in breach of contract against Erie by filing a complaint on June 24, 1999. Before the start of trial, the Scalias stipulated that the fire was the result of arson, although they denied any involvement in or knowledge of the fire. Jury trial was held on June 9–13, 2003, culminating in a verdict for Erie. The trial court denied the Scalias' post-trial motion and entered judgment against them on June 19, 2003.

¶ 4 In a criminal action arising from the same insurance claim, Serena Scalia pled guilty, on February 18, 2004, to one count of insurance fraud. She admitted overbilling Erie by approximately $14,000 for home repair costs unrelated to the fire damage.[3]

¶ 5 The issue presently before us stems from a petition filed by Erie for recovery of $48,455 in attorneys' fees against the Scalias, based on 42 Pa.C.S.A. § 2503(7)

---

* Retired Justice assigned to the Superior Court.

1. According to the Scalias' brief, the dwelling was insured for $309,000 and the personalty for $231,750.

2. Erie nonetheless paid $172,000 to the Scalias' mortgage company and also paid the Scalias directly for living expenses when they were unable to live in their home.

3. Serena Scalia was sentenced to eighty-four months probation for insurance fraud.

and (9)[4]. Erie contended that the civil action was arbitrary, vexatious and in bad faith. The trial court granted Erie's petition on August 18, 2004. The Scalias now appeal the award of attorney's fees, contending that the trial court abused its discretion.

¶ 6 By statute, the trial court has the authority to order a party to pay the opposing side's attorneys' fees when the party's conduct has been, *inter alia*, vexatious or obdurate or in bad faith. *See* 42 Pa.C.S.A. § 2503(7) & (9); *Kulp v. Hrivnak*, 765 A.2d 796, 799 (Pa.Super.2000); *State Farm Mutual Automobile Insurance Co. v. Allen*, 375 Pa.Super. 319, 544 A.2d 491, 494 (1988). A party has acted in bad faith when he files a lawsuit for purposes of fraud, dishonesty or corruption. *Berg v. Georgetown Builders, Inc.*, 822 A.2d 810, 816 (Pa.Super.2003) (citing *Thunberg v. Strause*, 545 Pa. 607, 615, 682 A.2d 295, 299–300 (1996)). A party's conduct has been vexatious if he brought or continued a lawsuit without legal or factual grounds and if the suit served only to cause annoyance. *Miller v. Nelson*, 768 A.2d 858, 862 (Pa.Super.), *appeal denied*, 566 Pa. 665, 782 A.2d 547 (2001) (citing *Thunberg, supra* at 615, 682 A.2d at 299). Obdurate is defined, *inter alia*, as "unyielding; stubborn." Funk and Wagnalls New Comprehensive International Dictionary of the English Language, Publishers International Press, Newark, N.J., 1982.

¶ 7 The trial court must make specific findings of the proscribed conduct to award attorneys' fees. *Township of South Strabane v. Piecknick*, 546 Pa. 551, 559, 686 A.2d 1297, 1301 (1996); *Kulp, supra* at 799; *Allen, supra* at 494. For example, this Court upheld an award of attorneys' fees based on an appellant's "dilatory, obdurate and vexatious" conduct after the appellee filed a petition to compel enforcement of a settlement agreement that appellant admitted violating. *Kulp, supra* at 797, 799. In another case, this Court upheld an award of attorneys' fees against a party after she, as an adopted individual, pursued a suit to inherit from her natural father's estate, knowing that the law prohibits adopted children from recovering from the estates of their natural parents. *In re Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019, 1021–22, *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994).

¶ 8 The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute. *Cummins v. Atlas R.R. Construction Co.*, 814 A.2d 742, 746 (Pa.Super.2002). In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion. *Lucchino v. Commonwealth*, 570 Pa. 277, 284, 286, 809 A.2d 264, 269–70 (2002); *Miller v. Nelson*, 768 A.2d 858, 861 (Pa.Super.2001). If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision. *Lucchino, supra* at 286, 809 A.2d at 269–70 (citing *Township of South*

4. The relevant statutory provision is the following:
   Right of participants to receive counsel fees.
   The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
   . . .
   (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
   . . .
   (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.
   42 Pa.C.S.A. § 2503.

*Strabane v. Piecknick,* 546 Pa. 551, 686 A.2d 1297 (1996)); *Berg, supra* at 816; *Miller, supra* at 861; *Allen, supra* at 494.

■ ¶ 9 The Scalias contend that the trial court abused its discretion in awarding Erie attorneys' fees because the record does not support the conclusion that they filed suit in bad faith, nor that their conduct during the course of the litigation was obdurate or vexatious. The Scalias insist that there was a reasonable basis for their breach of contract suit against Erie. Furthermore, the Scalias stress that the jury determined only that Erie did not breach its contract; it did not make any specific finding of fraud, misrepresentation or dishonesty on the part of the Scalias.[5] The Scalias argue that since the jury did not make specific findings regarding their conduct, an award of attorneys' fees based on improper conduct constitutes an abuse of discretion.

■ ¶ 10 The Scalias, however, are ignoring the fact that the trial judge—not the jury—was the fact-finder concerning Erie's petition for attorneys' fees. The issue of attorneys' fees was never presented to the jury, but was raised by petition after the trial. The jury addressed only the breach of contract claim. After the trial, by agreement of the parties, the trial judge decided the issue raised by Erie's petition for attorneys' fees. In his role as fact-finder for the issue of attorneys' fees, the trial judge was not—and indeed could not be—limited to the jury's fact-finding on the issue of breach of contract.

¶ 11 One factor that the trial judge considered, which was not available to the jury, was Serena Scalia's guilty plea to insurance fraud.[6] Several months after she lost in the civil proceeding, Mrs. Scalia pled guilty to overbilling Erie by approximately $14,000 as part of her insurance claim for fire damages. Her plea—which was on the record—constituted an admission of dishonest, fraudulent conduct in the filing of the insurance claim. This admission is sufficient to justify Erie's denial of the insurance claim, based on the policy provision that barred coverage when the policy holder misrepresented or concealed a material fact or circumstance concerning the insurance. Furthermore, in his Opinion, the trial judge took particular note of the burden to Erie in having to analyze 400 pages of billing documents, provided by the Scalias during discovery, which included the false claims. Trial Court Opinion, 8/18/04, at 10.

¶ 12 Serena Scalia's guilty plea strongly militates in favor of the award of attorneys' fees, but it is far from the only factor. Although the jury specifically found only that Erie did not breach its contract, there were only two grounds upon which it could have based this finding. First, the jury might have found that the Scalias committed arson. Second, the jury might have found that the Scalias intentionally concealed or misrepresented a material fact or circumstance during the fire investigation or regarding their claim. Arson and misrepresentation/concealment were the *only* grounds upon which Erie based its denial of the Scalias' claim. Under the insurance contract, if either of these were proven, Erie was absolved of

---

5. In the first interrogatory to the jury, the court asked whether the jury had found that Erie breached its contract with the Scalias. The jury answered no to this question, thereby resolving the dispute. Following the court's directions, the jury never reached the next interrogatories, which posed specific questions on the Scalias' conduct with regard to the fire and the subsequent insurance claim.

6. For purposes of Erie's claim for attorneys' fees, the trial court permitted Erie to supplement the record to include Serena Scalia's guilty plea to insurance fraud.

any responsibility to provide coverage for the claimed damage. In finding that Erie did not breach its contract, the jury must have accepted one or both of the grounds that Erie put forth.

¶ 13 Erie's case to the jury comprised numerous lines of uncontested evidence and testimony to support both grounds for denial of the Scalias' claim. After investigators had concluded their examination and analysis of the fire scene and the damaged residence, the Scalias stipulated that the fire was arson. Although the Scalias denied any knowledge of or involvement in the arson, Erie presented circumstantial evidence to the contrary. A neighbor had reported smoke coming from the home approximately fifteen minutes after Mrs. Scalia had departed. The doors were locked and there was no sign of forced entry. Fire investigators also found that the home was the scene of four previous, intentionally set fires. Mr. Scalia admitted that he had previously set fire to some insulation in the basement, although he stated that it was an accident. Erie presented overwhelming evidence that the Scalias were deeply in debt and that their business was faltering, in contrast to their proffered rosy financial assessments throughout the course of the litigation. Erie contended that their dire financial situation was the motive for arson. Erie further presented evidence that the Scalias had intentionally submitted home repair bills (including bills for a swimming pool) that were unrelated to damage caused by the fire. Mr. Scalia admitted that some of the bills submitted to Erie were for supplies for his business and had nothing to do with either his residence or the fire.

¶ 14 Given this large amount of evidence, we agree with the Scalias that we are unable to discern the exact rationale underlying the jury's finding of no breach of contract. However, we do not agree with the Scalias that our lack of such insight into the jury deliberations should insulate them from sanctions in the form of Erie's attorneys' fees. Whether the jury based its verdict primarily on a finding of arson or on a finding of misrepresentation/concealment is irrelevant. To find that Erie did not breach its contract, the jury of necessity was required to find that the Scalias engaged in arson and/or in misrepresentation/concealment, since these were the only grounds upon which Erie denied their insurance claim.

¶ 15 The Scalias cannot claim ignorance of their insurance policy and of the frivolity of their suit against Erie. By specific terms of the policy, Erie had no responsibility to provide coverage for damages if they were the result of the policy owner's arson or if the policy holder intentionally misrepresented or concealed material facts or circumstances concerning the insurance. Erie's letter of June 18, 1999 to the Scalias clearly reiterated these relevant policy provisions, as well as explained the specific reasons for its denial of coverage for fire damage. Nonetheless, the Scalias filed their complaint against Erie on June 24, 1999, alleging breach of contract, but knowing that Erie's denial of their claim was justified.

¶ 16 Presented with all of the evidence summarized above, the trial court most certainly did not abuse its discretion in awarding attorneys' fees to Erie pursuant to 42 Pa.C.S.A. § 2503(7) and (9). The Scalias knew that they had no legal or factual grounds on which to base their suit and the only result of the suit was annoyance; therefore, the Scalias' conduct was vexatious. The Scalias stubbornly persisted in this litigation, through rounds of discovery and several days of trial, knowing all the while that Erie was fully justified in denying their claims; therefore,

their conduct was obdurate. Because the Scalias based their lawsuit on dishonest claims, we also agree with the trial court that their actions were not in good faith.

¶ 17 We therefore affirm the trial court's order awarding attorneys' fees to Erie.

¶ 18 Order affirmed.