J-A07005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BETH WILSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD WILSON, | |
| Appellant | No. 864 WDA 2014 |

Appeal from the Order April 28, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD No. 11-007162-002

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED MARCH 31, 2015**

Donald Wilson (Husband) appeals from the order dated April 28, 2014, that directed that the Domestic Relations Office process a support order consistent with Beth Wilson's (Wife) and Husband's Marriage Settlement Agreement (MSA) and awarded to Wife $1,000 as a sanction.[1]  We affirm.

---

[1] The trial court's order, dated April 28, 2014, provides:

> AND NOW, to-wit, this 28th day of April, 2014, upon presentation and consideration of the within **Second Motion to Enforce Settlement Agreement and for Sanctions**, it is hereby ORDERED, ADJUDGED, and DECREED that the prayer of said **Motion** be and the same is hereby **GRANTED**.
>
> 1.  Domestic Relations shall immediately process the PACSES Order signed by the undersigned.
>
> 2.  Plaintiff Beth Wilson is awarded $1,000 as sanctions, payable to Paul J. Leventon & Associates, P.C., within twenty (20) days.

The trial court set forth the following factual and procedural background of this matter, leading up to the instant appeal:

> The parties were married on May 20, 1995. They are the parents of three (3) minor children. Wife filed an eight (8) count Complaint in Divorce on June 1, 2011. The matters of equitable distribution and related claims proceeded in the normal course, including the filing of inventories, engaging in discovery, and attending conciliations. A pre-trial conference was scheduled on November 26, 2013, during which the parties reached a settlement of their economic claims.
>
> The case history relevant to the within appeal commenced at an October 1, 2013 conciliation, wherein this Court, by Consent Interim Order, modified Husband's unallocated child support and APL obligation. The support order was reduced to eliminate the mortgage deviation Husband had been paying, because the marital home had been sold.[3] Husband had previously filed a modification petition and the Order further provided that his claim for retroactivity was ". .. preserved to equitable distribution, and this Order shall be interim until addressed at equitable distribution."
>
> ___
> [3]The new APL and child support order was unallocated in the amount of $3,100/month.
>
> At the subsequent November 26, 2013 pre-trial conference, the parties reached a global settlement of their economic claims. They consented to an Order that date which contained the terms of their settlement, and provided that Wife's counsel was to prepare a marriage settlement agreement or final equitable distribution order that would incorporate those terms. The settlement provided, *inter alia*, that Wife would receive $1,200/month in alimony from December 1, 2013 through November 30, 2015. Thereafter, alimony would be reduced to $800/month through November 30, 2017. No reference was made to Husband's claim for a retroactive mortgage deviation credit.
>
> Wife's counsel subsequently prepared and forwarded to Husband's counsel, proposed MSA and PACSES Orders. The PACSES Order provided for unallocated support of

$2,892/month, which included the $1,200/month in alimony per the MSA. Husband's attorney requested some minor changes, including the elimination of all child support language from the MSA since the parties were also executing a PACSES Order. No mention was made of Husband's mortgage deviation credit and no objections were made regarding the amounts of child support or alimony. Wife's counsel accommodated Husband's requests, including the removal of the child support provisions from the MSA. By e-mail of January 2, 2014, Husband's counsel acknowledged receipt of the revised Orders and indicated that his client would be executing them.

On January 17, 2014, Husband's attorney returned the MSA, executed by his client. Husband's attorney advised, however, that he was retaining the original PACSES Order, and suggested that he and Wife's counsel process the Order through screening together to "fully participate in the calculation of arrears, particularly since there needs to be some credit for the mortgage deviation that was contemplated at (the) last conciliation." Wife executed the MSA, and the same was entered by this Court on February 3, 2014.

On April 11, 2014, Husband's counsel advised Wife's counsel that Husband had unilaterally gone to the Domestic Relations Office and processed the MSA, which resulted in a PACSES Order being entered in the amount of the $1,200/month in alimony. The new order eliminated child support in its entirety, and scheduled a support conference for May 13, 2014. Upon learning same, Wife, on April 15, 2014, presented her first Petition to Enforce Settlement Agreement and for Sanctions.

This Court granted Wife's petition and ordered that Domestic Relations modify, on an interim basis, Husband's support to $2,892/month, unallocated, representing $1,200 for alimony and $1,642 for child support. The support conference/hearing was cancelled, and the parties were directed to cooperate in processing a PACSES Order which conformed to the parties' MSA. This Court deferred Wife's request for $2,000 as a sanction for Husband's action in unilaterally processing an order which was contrary to their agreement.

On April 16, 2014, in an effort to prepare and process a PACSES Order consistent with the parties' agreement, Wife's counsel consulted a Domestic Relation Officer. Wife's counsel

then prepared and submitted a PACSES Order to Husband's attorney. Receiving no response, Wife's attorney presented a Second Motion to Enforce Settlement Agreement on April 28, 2014. After argument on same, this Court granted the motion, entered the PACSES Order, and directed that the order be processed through the Domestic Relations Office. In addition, Wife was awarded $1,000 in attorney fee sanctions.

Husband subsequently presented two (2) motions to this Court on May 9, 2014: 1. Motion to Reconsider, arguing that Husband had not waived his mortgage deviation credit; and 2. Petition to Enforce Marital Settlement Agreement, arguing that Wife was only entitled to a total of $1,200/month in combined child and spousal support until the parties were divorced. This Court found no merit to the motions, and denied both.

Trial Court Opinion, 7/25/14, at 1-5 (citations to the record omitted).

Husband then filed the appeal from the April 28, 2014 order that is now before this Court. Husband also filed a concise statement of matters complained of on appeal in response to the trial court's order requesting same. *See* Pa.R.A.P. 1925. In his brief, Husband sets forth the following three issues:

A. Whether the trial court abused its discretion and erred in disallowing Husband's mortgage calculation retroactivity that was preserved by the trial court's order of October 4, 2013[?]

B. Whether the trial court abused its discretion and erred in denying with prejudice [Husband's] request for a modification hearing in its May 9, 2014 order denying reconsideration[?]

C. Whether the trial court abused its discretion in assessing unwarranted sanctions and counsel fees without hearing in its April 28, 2014 order, and abused its discretion by denying with prejudice Appellant's request for a hearing on sanction in the May 9, 2014 order denying reconsideration[?]

Husband's brief at 4.

- 4 -

Before we may consider Husband's issues, we must address Wife's Motion to Quash [Husband's] Notice of Appeal. Essentially, Wife asserts that Husband's issues arise from two court orders that were entered on May 9, 2014, and do not arise from the April 28, 2014 order. She further points out that Husband did not file appeals from the two May 9, 2014 orders. One of the May 9, 2014 orders denies Husband's Motion for Reconsideration of the April 28, 2014 order, wherein he requested that the April 28th order be amended to include a mortgage expense credit to Husband through PACSES in the amount of $1,972 and to vacate the award of counsel fees to Wife. The other May 9, 2014 order denied Husband's request for a hearing in connection with his Petition to Enforce Marital Settlement Agreement that also relates back to the April 28th order. Although we agree with Wife that Husband's first two issues do not arise directly from the April 28th order, we recognize that the May 9th orders are interrelated with that previous order. Therefore, we refuse to quash Husband's appeal for the reasons stated by Wife in her Motion to Quash.

Rather, we review this case in relation to the issues raised by Husband and conclude that the court's order should be affirmed. Having examined the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Susan Evashavik DiLucente of the Court of Common Pleas of Allegheny County, dated July 25, 2014, we conclude that Judge DiLucente's well-reasoned opinion appropriately disposes of the issues presented by Husband on appeal. We discern no

abuse of discretion or error of law. Accordingly, we adopt Judge DiLucente's opinion as our own and affirm the April 28, 2014 order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

BETH WILSON,

                Plaintiff,

    v.

DONALD WILSON,

                Defendant.

No.:   FD 11-007162-002

Superior Court No.: 864 WDA 2014

**OPINION**

BY:

Honorable Susan Evashavik DiLucente
5024 Family Law Center
440 Ross Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:
Paul J. Leventon, Esquire
Meri M. Iannetti, Esquire
Suite # 1230, Grant Building
310 Grant Street
Pittsburgh, PA 15219

Counsel for Defendant:
Timothy G. Uhrich, Esquire
909 The Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

FILED

14 JUL 25 PM 2:18
DEPT.
CIVIL
ALLEGHENY PA



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

| | |
|---|---|
| BETH WILSON, | No.: FD 11-007162-002 |
| Plaintiff, | Superior Court No.: 864 WDA 2014 |
| v. | |
| DONALD WILSON, | |
| Defendant. | |

## OPINION

**Evashavik DiLucente, J.**                                          **July 25, 2014**

The Defendant, DONALD WILSON ("Husband"), appeals from this Court's Order

of April 28, 2014.[1]  This Order was entered on Plaintiff, BETH WILSON's ("Wife"), Second

Motion to Enforce Settlement Agreement and for Sanctions.   Said Order directed the

Domestic Relations Office to immediately process a support order (PACSES Order)

consistent with the parties Marriage Settlement Agreement ("MSA")[2], and awarded

Wife $1,000 as sanctions.  For the reasons set forth below, this Court's Order was

appropriate and should be affirmed.

## Background

The parties were married on May 20, 1995.  They are the parents of three (3)

minor children.  Wife filed an eight (8) count Complaint in Divorce on June 1, 2011.

The matters of equitable distribution and related claims proceeded in the normal

---

1 This Order was issued in Motions Court.  Hence, there is no record or transcript of the proceeding.

2 The parties actually signed a Final Equitable Distribution Order, but as Wife referred to the same as a Marriage
Settlement Agreement in her motions, this Court has utilized that term for consistency.

1

course, including the filing of inventories, engaging in discovery, and attending conciliations. A pre-trial conference was scheduled on November 26, 2013, during which the parties reached a settlement of their economic claims.

The case history relevant to the within appeal commenced at an October 1, 2013 conciliation, wherein this Court, by Consent Interim Order, modified Husband's unallocated child support and *APL* obligation. The support order was reduced to eliminate the mortgage deviation Husband had been paying, because the marital home had been sold.[3] Husband had previously filed a modification petition and the Order further provided that his claim for retroactivity was ". . . preserved to equitable distribution, and this Order shall be interim until addressed at equitable distribution." (See, Order of 10/1/13).

At the subsequent November 26, 2013 pre-trial conference, the parties reached a global settlement of their economic claims. They consented to an Order that date which contained the terms of their settlement, and provided that Wife's counsel was to prepare a marriage settlement agreement or final equitable distribution order that would incorporate those terms. The settlement provided, *inter alia*, that Wife would receive $1,200/month in alimony from December 1, 2013 through November 30, 2015. Thereafter, alimony would be reduced to $800/month through November 30, 2017. (See Order of 11/26/13, ¶ 2). No reference was made to Husband's claim for a retroactive mortgage deviation credit.

---

3 The new *APL* and child support order was unallocated in the amount of $3,100/month.

2

Wife's counsel subsequently prepared and forwarded to Husband's counsel, proposed MSA and PACSES Orders. The PACSES Order provided for unallocated support of $2,892/month, which included the $1,200/month in alimony per the MSA. Husband's attorney requested some minor changes, including the elimination of all child support language from the MSA since the parties were also executing a PACSES Order. No mention was made of Husband's mortgage deviation credit and no objections were made regarding the amounts of child support or alimony. Wife's counsel accommodated Husband's requests, including the removal of the child support provisions from the MSA. (See, Exhibit "C" of Wife's April 15, 2014 Emergency Motion to Enforce Settlement Agreement and for Sanctions). By e-mail of January 2, 2014, Husband's counsel acknowledged receipt of the revised Orders and indicated that his client would be executing them.

On January 17, 2014, Husband's attorney returned the MSA, executed by his client. Husband's attorney advised, however, that he was retaining the original PACSES Order, and suggested that he and Wife's counsel process the Order through screening together to "fully participate in the calculation of arrears, particularly since there needs to be some credit for the mortgage deviation that was contemplated at (the) last conciliation." (See, Exhibit "D" of Wife's April 15, 2014 Emergency Motion to Enforce Settlement Agreement and for Sanctions). Wife executed the MSA, and the same was entered by this Court on February 3, 2014.

On April 11, 2014, Husband's counsel advised Wife's counsel that Husband had unilaterally gone to the Domestic Relations Office and processed the MSA, which

3

resulted in a PACSES Order being entered in the amount of the $1,200 /month in alimony. The new order eliminated child support in its entirety, and scheduled a support conference for May 13, 2014. (See, Exhibit "F" of Wife's April 15, 2013 Motion to Enforce Settlement Agreement and for Sanctions). Upon learning same, Wife, on April 15, 2014, presented her first Petition to Enforce Settlement Agreement and for Sanctions.

This Court granted Wife's petition and ordered that Domestic Relations modify, on an interim basis, Husband's support to $2,892/month, unallocated, representing $1,200 for alimony and $1,642 for child support. The support conference/hearing was cancelled, and the parties were directed to cooperate in processing a PACSES Order which conformed to the parties' MSA. This Court deferred Wife's request for $2,000 as a sanction for Husband's action in unilaterally processing an order which was contrary to their agreement.

On April 16, 2014, in an effort to prepare and process a PACSES Order consistent with the parties' agreement, Wife's counsel consulted a Domestic Relations Officer. Wife's counsel then prepared and submitted a PACSES Order to Husband's attorney. Receiving no response, Wife's attorney presented a Second Motion to Enforce Settlement Agreement on April 28, 2014. After argument on same, this Court granted the motion, entered the PACSES Order, and directed that the Order be processed through the Domestic Relations Office. In addition, Wife was awarded $1,000 in attorney fee sanctions.

Husband subsequently presented two (2) motions to this Court on May 9, 2014:

1. Motion to Reconsider, arguing that Husband had not waived his mortgage deviation credit; and, 2. Petition to Enforce Marital Settlement Agreement, arguing that Wife was only entitled to a total of $1,200/month in combined child and spousal support until the parties were divorced. This Court found no merit to the motions, and denied both.

On May 27, 2014, Husband filed a Notice of Appeal from the Order of April 28, 2014, which is the subject of this Opinion. Pursuant to this Court's 1925(b) Order, Husband filed his Concise Statement of Matters Complained of on Appeal. Husband raises the following issues:

1. Whether the trial court abused its discretion and erred in disallowing Appellant's (Husband's) mortgage calculation retroactivity that was preserved by the trial court's order of October 4 [sic], 2013.[4]

2. Whether the trial court abused its discretion and erred in denying with prejudice Appellant's (Husband's) request for a modification hearing in its May 9, 2014 order denying reconsideration.

3. Whether the trial court abused its discretion in assessing unwarranted sanctions and counsel fees without hearing in its April 28, 2014 order, and abused its discretion by denying with prejudice Appellant's (Husband's) request for a hearing on sanctions in the May 9, 2014 order denying reconsideration.

## Analysis

Husband's first two issues concern his claim for a retroactive mortgage deviation preserved pursuant to the October 1, 2013 Interim Order. Husband relies on

---

[4] The Order of Court regarding the issue of interim support was October 1, 2013, not October 4, 2013.

5

the provision of that Order which provided that "[a]ll issues, including retroactivity, preserved to equitable distribution as this order shall be interim until addressed at equitable distribution." Following the entry of that Order, this Court scheduled the matter for a hearing on equitable distribution and related claims, and for a pre-trial conference.

As stated, the parties reached a comprehensive settlement of their economic claims at the pre-trial conference. The terms of the settlement were included in the Order, which further directed Wife's counsel to prepare a final MSA incorporating the same. Husband's mortgage credit claim was not an included term. As noted earlier, Wife's Counsel prepared the MSA, and after some minor revisions requested by Husband, none of which pertained to his mortgage deviation credit, the parties executed the same. Pursuant to the terms of the October 1, 2013 Order, Husband's claim was extinguished at that time, as equitable distribution was concluded. Moreover, provision XVII of the MSA specifically provided that "[a]ll other claims pending and/or previously raised by either party, but not specifically identified and addressed herein are dismissed."

It is well-established that a consent order entered in an action in equity is not considered a legal determination made by the court, but is instead a binding agreement between the parties. *Osial v. Cook*, 803 A.2d 209 (Pa. Super. 2002). Likewise, judicial policies favor settlements, and it is not the role of the court to re-evaluate such agreements. *Greentree Cinemas, Inc. v. Hakim*, 432 A.2d 1039 (Pa.

6

**Super. 1981).** Rather, the Court will enforce such settlements in accordance with the principles of contract law. ***Lobaugh v. Lobaugh, 753 A.2d 834 (Pa. Super. 2000).***

The law in Pennsylvania is well settled that "[w]hen the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement,. . . (citations omitted). . . which will be given its commonly accepted and plain meaning. . . (citations omitted)." ***LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647-648 (Pa. 2009).*** "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding." (Citations omitted). ***Osial, supra.*** *at* 213.

In the case *sub judice*, Husband argues that he is entitled to credit for a mortgage deviation, as the same was somehow preserved. His argument is contrary to the clear and unambiguous terms of the 10/1/13 and 11/26/13 Consent Orders, and the 2/3/14 MSA. The 10/1/13 Interim Order only preserved the claim until the time of equitable distribution. The 11/26/13 Order, which set forth the equitable distribution terms, did not include the claim. Finally, the MSA did not address the claim, and clearly and unambiguously stated that "[a]ll other claims pending and/or previously raised by either party, but not specifically identified and addressed herein are dismissed." (Provision XVII of the February 3, 2014 Final Equitable Distribution Order of Court by Consent). Hence, whether such matter was an issue, Husband has waived it.

Husband is attempting to resurrect the claim via the PACSES child support order. That Order controls child support effective 12/1/13 and provides for the

7

collection of alimony, as established by the MSA. Husband's mortgage deviation claim was extinguished on 11/26/13. Husband cannot seek a retroactive modification of an Order based upon an extinguished claim. As such, his argument has no merit.

As to the second mortgage deviation related issue, Husband contends that a hearing should have been schedule to address this matter. For the reasons set forth above, this issue is likewise meritless.

Finally, Husband contends that this Court erred in assessing counsel fees without conducting a hearing. The authority to award counsel fees is by statute, as taxable costs for dilatory, obdurate or vexatious conduct, and by the Court's own inherent power to take appropriate action to ensure that the Court's business is conducted in an orderly fashion. A trial court has great latitude and discretion with respect to an award of attorney fees. *Scalia v. Erie Insurance Exchange*, 878 A.2d 114 (Pa. Super. 2005). "If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith," that decision will not be disturbed on appeal. *Id.* at 116. Moreover, where the facts are undisputed, an evidentiary hearing is not required prior to an award of counsel fees pursuant to 42 Pa. C.S.A. § 2503. *Wood v. Geisenhemer-Shaulis*, 827 A.2d 1204 (Pa. Super. 2003), citing *Kulp v. Hrivnak*, 765 A.2d 796 (Pa. Super. 2000).

In the within matter, Husband argues that the imposition of attorney fees was unwarranted. However, Husband ignores the fact that his unilateral actions caused Wife to seek Court intervention on two occasions to enforce the MSA. It is undisputed

8

that Husband, of his own volition and without his counsel's knowledge, went to the Domestic Relations Office and obtained a PACSES order, which suspended his child support. He then refused to cooperate and comply with this Court's Order to remedy the same. All of Husband's actions and alleged defenses thereto are contained in the pleadings and exhibits of record. There was no need for an evidentiary hearing. Husband's conduct was obdurate, vexatious, and constituted bad faith.

Wife sought sanctions in the amount of $2,000 to compensate her for attorney fees incurred as a result of Husband's unwarranted actions. However, this Court only awarded her $1,000. To conduct a hearing on this issue would have constituted a waste of judicial economy, further delay, and additional attorney fees and expenses.

For the reasons set forth herein, this Court's Order of April 28, 2014 should be affirmed.

BY THE COURT:

Dated: 7/25/14

_____ J.
Susan Evashavik DiLucente

9